United States District Court
Southern District of Texas
**ENTERED**
March 30, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **VALERIE REYNOLDS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-CV-00182** |
| | § | |
| **KURARAY AMERICA, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Valerie Reynolds has worked as a process operator at the same chemical plant in La Porte, Texas, for nearly 20 years. She is one of two openly homosexual women at the plant and one of only a few women among the facility's 50 operators. While many of her colleagues—mostly heterosexual men—advanced into supervisory roles or received supervisory training, Reynolds's career stagnated. Reynolds alleges that her employer, Defendant Kuraray America, Inc. ("Kuraray"), discriminated against her based on her sex and sexual orientation. She also claims that Kuraray retaliated against her after she sought relief.

Pending before the Court is Defendant's Motion for Summary Judgment. (Dkt. No. 34). For the reasons below, the Court **GRANTS in part** and **DENIES in part** the Motion.

## I. BACKGROUND[1]

Reynolds began working at the LaPorte plant in 2005. (Dkt. No. 41 at 6); (*see also* Dkt. No. 34-4 at 23). Kuraray purchased the plant in 2014. (Dkt. No. 34-2 at 2). In July 2019, Reynolds told her supervisor, Daniel Clark, (Dkt. No. 34-2 at 1), that she was interested in training for a supervisory position, (Dkt. No. 41-1 at 1). Reynolds renewed her request in May 2020 after learning that a second employee had received the training before her despite being hired later. (*Id.* at 12). Clark responded with steps Reynolds could take to get the training. (*Id.* at 13).

Reynolds applied for another supervisory position in September 2019. (Dkt. No. 34-5). Kuraray received Reynolds's application but did not promote or interview her because she did not meet the "minimum requirements for the position." (Dkt. No. 34-8 at 2–3). Joseph Waddell, who worked in human resources for the La Porte site, (Dkt. No. 34-4 at 50), and Clark contacted Reynolds to help with future promotion opportunities, (Dkt. No. 34-2 at 2). Reynolds did not follow up with Clark or Waddell. (*Id.*); (*see also* Dkt. No. 34-9 at 1–2). In June 2021, Reynolds applied for a second supervisory position. (Dkt. No. 34-4 at 112). Kuraray denied Reynolds's application the next month for the same reason as in 2019. (Dkt. No. 34-11).

Reynolds filed an Equal Employment Opportunity Commission ("EEOC") charge against Kuraray in August 2020. (Dkt. No. 34-4 at 75). Reynolds alleged that Kuraray

---

[1] Except where noted, this section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant. *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). The Court has not weighed evidence or made credibility findings. *Id.*

discriminated against her based on her sex and sexual orientation by passing her over for promotions, denying her advancement opportunities, and treating her differently than her colleagues. (Dkt. No. 41-5 at 4). Since then, Reynolds has been disciplined three times by Kuraray. (Dkt. No. 34-12). In July 2021, Kuraray issued Reynolds a "Note to File" for an operational error. (*Id.* at 1); (*see also* Dkt. No. 34-2 at 2). The next month, it placed Reynolds on special review for unsatisfactory performance. (Dkt. No. 34-12 at 2–4); (*see also* Dkt. No. 34-2 at 2). And in March 2022, it put Reynolds on probation for her role in an overpressure event that allegedly cost Kuraray $10 million. (Dkt. No. 34-12 at 5–7); (*see also* Dkt. No. 34-2 at 2). Kuraray disciplined six other employees for the same event. (Dkt. No. 34-10 at 90–91).

Reynolds sued Kuraray on January 18, 2022, alleging sex discrimination and retaliation under Title VII. (Dkt. No. 1). Kuraray answered, (Dkt. No. 5), and moved for summary judgment on February 17, 2025, (Dkt. No. 34).

## II. LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The moving party "always

bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)), *as revised* (July 14, 2017). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## III. DISCUSSION

Kuraray argues that it is entitled to summary judgment on all of Reynolds's claims. (Dkt. No. 34 at 7). For Reynolds's discrimination claim, Kuraray argues that (1) Reynolds has failed to produce direct evidence of discrimination, (*id.* at 15); (2) Reynolds cannot establish a prima facie case of discrimination, (*id.* at 15–17); and (3) in the alternative, Kuraray has produced a legitimate, nondiscriminatory reason for the alleged adverse action, (*id.* at 15). For Reynolds's retaliation claim, Kuraray argues that (1) Reynolds cannot establish a prima facie case of retaliation because she did not suffer a materially adverse employment action and (2) she cannot show a causal connection between her protected activity and Kuraray's actions. (*Id.* at 19–25). The Court holds that Kuraray has not met its summary-judgment burden as to Reynolds's discrimination claim but that summary judgment is appropriate as to Reynolds's retaliation claim.

### A. DISCRIMINATION

Reynolds alleges that Kuraray discriminated against her because of her sex. (Dkt. No. 1 at 2).[2] "In employment discrimination cases, a plaintiff may present his case by

[2] While Reynolds asserts that she was discriminated against both because of her sex and sexual orientation, both allegations constitute a single sex discrimination claim under Title VII.

(continue)

direct or circumstantial evidence, or both." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002)). Direct evidence is evidence that, if believed, proves discriminatory motive "without inference or presumption." *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). Circumstantial evidence uses the *McDonnell Douglas* burden-shifting framework.[3] *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 389 (5th Cir. 2020). Reynolds has not offered direct evidence of sex discrimination, so the Court applies the *McDonnell Douglas* analysis. (Dkt. No. 34 at 15); (Dkt. No. 41 at 25–27 (discussing *McDonnell Douglas* framework)).

Under *McDonnell Douglas*, a plaintiff must first make a prima facie case of discrimination. To do that, a plaintiff must show (1) she is a member of a protected group; (2) she was qualified for the position at issue; (3) her employer took an adverse employment action; and (4) her employer treated her less favorably than other similarly situated employees outside the protected group. *Hassen v. Ruston La. Hosp. Comp., L.L.C.*, 932 F.3d 353, 356 (5th Cir. 2019), *as revised* (Aug. 1, 2019) (citing *Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016)). If the plaintiff makes a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* (quoting *Morris*, 827 F.3d at 400). If the employer does, the burden shifts back to the plaintiff to "produce

---

*See Bostock v. Clayton Cnty.*, 590 U.S. 644, 662, 140 S.Ct. 1731, 1743, 207 L.Ed.2d 218 (2020) ("For an employer to discriminate against employees for being homosexual or transgender, the employer must intentionally discriminate against individual men and women in part because of sex.").

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

evidence from which a jury could conclude that [the employer's] articulated reason is pretextual." *Nall*, 917 F.3d at 342 (citing *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016)).

**1. <u>Prima Facie Case of Discrimination</u>**

The Parties do not dispute that Reynolds, a homosexual woman, is a member of a protected class. (Dkt. No. 34 at 15). Kuraray also does not contest that Reynolds suffered an adverse employment action, (*see generally* Dkt. No. 34 at 13–19), or that employees outside her protected class received training and promotions, (Dkt. No. 34 at 10–11); (Dkt. No. 34-4 at 64). The Parties disagree only on whether Reynolds was qualified for the positions she sought in 2019 and 2021. (*Compare* Dkt. No. 34 at 15–17); *with* (Dkt. No. 41 at 22–25).

Kuraray argues that Reynolds was not qualified for the supervisory positions because she did not meet the minimum experience requirements. (Dkt. No. 34 at 18). Reynolds argues that she was qualified because the positions required only three or more years of supervisory experience. (Dkt. No. 41 at 7–9, 15); (*see also* Dkt. No. 41-4). Reynolds supports this claim with an internal Kuraray career-development guide from 2019. (Dkt. No. 41-4). The guide states that three or more years of supervisory experience is sufficient to be qualified for the supervisor role. (*Id.*) Kuraray argues that Reynolds's argument fails because she relies on a career development guide, rather than a job posting or application. (Dkt. No. 42 at 2). However, the career development guide, as an official Kuraray document, creates a fact issue as to whether Reynolds was qualified for the 2019 and 2021 positions. Reynolds testified to having between two and four years of

supervisory experience. (Dkt. No. 34-4 at 114). If the positions required only three or more years of experience, Reynolds could have been qualified for either position. In reaching this conclusion, the Court recognizes that the burden on plaintiffs at the prima facie stage is "not onerous." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228, 135 S.Ct. 1338, 1354, 191 L.Ed.2d 279 (2015) (quoting *Tex. Dept. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981)). Therefore, viewing the evidence in the light most favorable to the nonmovant, Reynolds has successfully made out a prima facie case of discrimination.

### 2. Kuraray's Legitimate, Nondiscriminatory Reason

Because Reynolds has made a prima facie case, the burden shifts to Kuraray to articulate a legitimate, nondiscriminatory reason for the adverse action. *Hassen*, 932 F.3d 353 at 356. "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (per curiam), *abrogated on other grounds by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023) (en banc).

Kuraray's legitimate, nondiscriminatory reason for failing to promote Reynolds is that she was not qualified. (Dkt. No. 34 at 15–17). That is a legitimate, nondiscriminatory reason for an adverse employment action. *See, e.g.*, *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317–18 (5th Cir. 2004). Therefore, Kuraray has met its burden of production.

### 3. Pretext for Discrimination

Because Kuraray has provided a legitimate, nondiscriminatory reason, the burden now shifts to Reynolds to "produce evidence from which a jury could conclude that [the

employer's] articulated reason is pretextual." *Nall*, 917 F.3d at 342. A pretext in this context is a "coverup" for a discriminatory decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805, 93 S.Ct. 1817, 1826, 36 L.Ed.2d 668 (1973); *see also Godfrey v. Katy Indep. Sch. Dist.*, 395 F.App'x 88, 91 (5th Cir. 2010).

Kuraray's legitimate, nondiscriminatory reason mirrors its argument against Reynolds's prima facie case—i.e., she was not qualified for the position. The Fifth Circuit has held that when an employer puts the employee's qualifications at issue in both the prima facie and the pretext stage, the objective hiring criteria is dealt with at the prima facie stage and the subjective criteria is dealt with at the pretext stage. *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 681 (5th Cir. 2001); *see also Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 350–51 (5th Cir. 2007). Kuraray only disputes Reynolds's objective qualifications. The career development guide states that three or more years of supervisory experience is the objective minimum. (Dkt. No. 41-4). The job posting states five or more years of supervisory experience is the objective minimum. (Dkt No. 41-6 at 2). The conflicting evidence creates a jury question regarding what the objective qualifications are.

Even if objective qualifications were part of the pretext analysis, Kuraray's summary-judgment motion still fails. The Fifth Circuit recently clarified that the failure to provide "a roughly similar opportunity to access the necessary components of a training program" can support a discrimination claim based on the adverse employment action that comes from the lack of training. *Rahman v. Exxon Mobil Corp.*, 56 F.4th 1041, 1046 (5th Cir. 2023); *see also Gupta v. Qwest Gov. Servs., Inc.*, No. 3:20-CV-03560, 2023 WL 2025056, at *10 (N.D. Tex. Feb. 14, 2023) ("[T]he court finds that Plaintiff has sufficiently

presented competent summary judgment evidence that she suffered an adverse employment action when she was denied training opportunity . . . .); *Thomas v. Burrows*, No. 2:22-CV-03511, 2023 WL 1783694, at *4 (E.D. La. Feb. 6, 2023) ("Allegations regarding disparate mentoring and training may qualify as an adverse employment action when same is directly tied to the worker's job duties, compensation, or benefits . . . ." (citing *Rahman*, 56 F.4th at 1046)). Accordingly, Reynolds can meet her burden by showing that her lack of supervisory experience resulted from discrimination and that inadequate training affected her job duties, compensation, or benefits.

The record indicates that Reynolds's supervisory experience and promotion potential was constrained by Kuraray's control over training opportunities—opportunities that Reynolds was allegedly denied. Kuraray provides supervisory experience to employees through a process called "detailing" or "step-up." (Dkt. No. 41-12 at 51, 80). This process trains employees to become temporary supervisors, or "detail supervisors," whenever a supervisor is out. (*Id.*); (Dkt. No. 34-4 at 34–35). Being a detail supervisor helps meet the minimum supervisory experience requirements for becoming a shift supervisor, (Dkt. No. 41-10 at 56), which is one of the roles Reynolds applied for, (*id.* at 54). Similar supervisory experience opportunities are also offered during shutdowns via random selection. (*Id.* at 77). Detail supervisors are chosen by shift supervisors. (*Id.* at 68, 73); (*see also* Dkt. No. 34-4 at 96). There is no record evidence indicating other ways to obtain supervisory experience. (*Cf.* Dkt. No. 41-12 at 82–83).

Reynolds attempted to obtain supervisory experience through detailing or overseeing shutdowns. (*See* Dkt. No. 41-1 at 4, 11–12, 17–20); (Dkt. No. 34-4 at 34–35, 44–

45, 67–68). While Kuraray gave Reynolds some supervisory training and experience, (*see* Dkt. No. 41-1 at 11–12, 17–19); (Dkt. No. 41-10 at 83); (Dkt. No. 34-4 at 63), the record reflects a pattern of Reynolds's less-tenured male colleagues obtaining more supervisory training and experience than her. (Dkt. No. 34-4 at 59–60). Keaton Bowland, one of Reynolds's male colleagues, began detail-supervisor training only two years after he was hired. (Dkt. No. 41-10 at 72). Chris Aguero, another male colleague hired after Reynolds, began training for the same role. (Dkt. No. 41-1 at 12). Reynolds also testified that two other male colleagues were training for the detail-supervisor position, despite being newer hires. (Dkt. No. 34-4 at 59–60); (*see also* Dkt. No. 41-10 at 74–75).

Although the summary-judgment record reflects that Reynolds has received some supervisory experience and has failed to follow up on some opportunities to discuss her career trajectory, this does not fully account for the faster career progressions of her heterosexual male counterparts. Career discussions were only offered after Reynolds complained about discrimination. (Dkt. No. 41-1 at 2). By that point, Reynolds had been employed with Kuraray for five years but was still not training her to be a detail supervisor. (*See* Dkt. No. 41-11 at 34–35). Yet, Bowland reached that point in two years. (Dkt. No. 41-10 at 72). This record creates a jury question regarding whether Reynolds's access to supervisory experience, and thus to promotion possibilities, was prevented by Kuraray for discriminatory reasons. Accordingly, the Court finds that there is a genuine issue of material fact regarding Reynolds's discrimination claim.

### B. RETALIATION

Reynolds also alleges that Kuraray retaliated against her because she filed an EEOC charge and later filed this action. (Dkt. No. 1 at 2); (*see* Dkt. No. 41 at 28–29). Like employment discrimination, Title VII retaliation claims are subject to the *McDonnell Douglas* framework. *Jones v. Gulf Coast Rest. Grp, Inc.*, 8 F.4th 363, 368 (5th Cir. 2021). After following the burden-shifting framework, the Court holds that Reynolds's retaliation claim does not survive summary judgment.

#### 1. Prima Facie Case of Retaliation

To establish a prima facie claim of retaliation under Title VII Reynolds must show that (1) she engaged in protected activity; (2) Kuraray took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013). Kuraray does not dispute that Reynolds engaged in protected activity by filing her EEOC charge. (Dkt. No. 34 at 20). The Parties disagree on whether Reynolds showed that she suffered an adverse employment action and whether there is a causal connection.

##### a. Adverse employment action

Title VII's anti-retaliation provision "applies only when the retaliatory action is 'materially adverse,' meaning that it causes 'significant' harm." *Muldrow v. City of St. Louis*, 601 U.S. 346, 357, 144 S.Ct. 967, 976, 218 L.Ed.2d 322 (2024) (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2005)). The Court considers only actions occurring after Reynolds's earliest protected activity—filing her EEOC charge—because no causal link can exist between protected

activity and events that predate it. *See Stone v. La. Dept. of Revenue*, 590 F.App'x 332, 341 (5th Cir. 2014).

Reynolds filed an EEOC charge in August 2020. Kuraray denied Reynolds's shift-supervisor application in July 2021. (Dkt. No. 34-11). Kuraray also disciplined Reynolds three times; specifically, in July 2021, August 2021, and March 2022.[4] (Dkt. No. 34-12). "Failure to promote is clearly an adverse employment action." *Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 364 (5th Cir. 2013) (citing *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000)). So too a "formal reprimand is an adverse employment action." *Lubbe v. Milanovich*, No. A-18-CV-1011-RP, 2022 WL 3129106 (W.D. Tex. Feb. 25, 2022); *see also Breaux*, 205 F.3d at 157. Therefore, Reynolds has suffered an adverse employment action.[5]

b. Causal connection to protected activity

To establish a prima facie case of retaliation, Reynolds must show a "causal connection" between the adverse employment actions and her protected activity. Reynolds argues that the causal connection is proved by the close timing between the filing of both her EEOC charge and this lawsuit and the adverse actions. (Dkt. No. 41 at

---

4 Reynolds states that she was disciplined in January 2022. (Dkt. No. 34-4 at 82). She was placed on probation in March 2022, but the event happened in January 2022. (Dkt. 34-12 at 5–7). The Court's analysis of the prima facie retaliation claim is the same using either date.

5 Reynolds also alleges that Kuraray assigned her to "undesirable shifts." (Dkt. No. 34-4 at 101–10). However, what makes these shifts undesirable is that they have supervisors that Reynolds considers more strict. (*Id.* at 102). Furthermore, the record shows that Kuraray employees "get rotated around all the time. . . . There[] [are] certain supervisors that [Reynolds] prefer[s] not to work for." (*Id.*). Kuraray has not changed the terms, conditions, or privileges of Reynolds's employment; nor is Reynolds treated any differently from other Kuraray employees. Accordingly, these "undesirable shifts" are not materially adverse employment actions.

28–29). Close timing may satisfy the causal-connection element, *Feist*, 730 F.3d at 454 (quoting *McCoy*, 492 F.3d at 562), but the "temporal proximity must generally be 'very close,'" *id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (per curiam)). "[A] time lapse of up to four months may be sufficiently close," *id.* (internal quotation marks omitted) (quoting *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001)), but a five-month lapse is insufficient, absent other evidence of retaliation, *id.* (citing *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2022)).

The only causal connection that Reynolds can establish through close timing (her only causal evidence) is between her probation and the filing of this action.[6] Reynolds filed suit in January 2022. (Dkt. No. 1). Kuraray placed Reynolds on probation in March 2022. (Dkt No. 34-12 at 5–7). The two-month gap is sufficiently close. *See Feist*, 730 F.3d at 454. Reynolds has thus shown a prima facie case of retaliation as to the January 2022 probation but not the other alleged retaliatory acts.

**2. <u>Kuraray's Legitimate, Nonretaliatory Reason</u>**

Because Reynolds has met her burden of showing a prima facie case, Kuraray must articulate a legitimate, nonretaliatory reason for placing Reynolds on probation. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 653 (5th Cir. 2025) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105

---

6 While Kuraray does not concede that the filing of a lawsuit constitutes a protected activity, the Fifth Circuit has held that it does. *Casarez v. Burlington Northern/Santa Fe Co.*, 193 F.3d 334, 339 (5th Cir. 1999) ("Casarez's complaint to the EEOC and subsequent suit are protected activity . . . .").

(2000)). Kuraray's reason for placing Reynolds on probation is for "failing to follow Operating Procedures," (Dkt. No. 34-12 at 5), which allegedly contributed to an overpressure incident that cost Kuraray millions of dollars, (Dkt No. 41-10 at 90). Workplace errors are a legitimate, nondiscriminatory reason for discipline. *See, e.g.*, *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 231–33 (5th Cir. 2015). Kuraray has thus produced a legitimate, nonretaliatory reason for placing Kuraray on probation.

**3. <u>Pretext for Retaliation</u>**

Reynolds now has the burden of showing that Kuraray's reasons are a pretext for retaliation. To meet that burden, Reynolds must show "that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Shahrashoob*, 125 F.4th at 653 (quoting *Feist*, 730 F.3d at 454).

Reynolds has produced no evidence that Kuraray's reasons are a pretext for retaliation. Reynolds's retaliation allegation relies solely on the temporal proximity of the probation to the filing of this action. (*See* Dkt. No. 41 at 27–29). Temporal proximity is not enough at the pretext stage. *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019). Reynolds has failed to produce evidence that suggests that the "employer's explanation is false." *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1002 (5th Cir. 2022)). Nothing in her Response, (Dkt. No. 41), rebuts Kuraray's assertion that she was disciplined because "she did not completely empty all of the final acetate from . . . the column and associated equipment," which contributed to the overpressure incident that

cost Kuraray over $10 million,[7] (Dkt. No. 41-10 at 91). Reynolds also fails to distinguish herself from the six other individuals that were disciplined for the same incident. (*See* Dkt. No. 41-10 at 91). On the other hand, Kuraray's action complied with their progressive discipline policy. (Dkt. No. 41-10 at 38–39). Playing a role in causing the company millions of dollars reasonably comes with disciplinary consequences.

Reynolds has not shown that a genuine issue of material fact exists regarding whether Kuraray's reasons for disciplining her were pretextual. As a result, Reynolds's Title VII retaliation claim fails.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS in part** and **DENIES in part** Kuraray's Motion for Summary Judgment. (Dkt. No. 34). The Court **GRANTS** summary judgment on Reynolds's retaliation claims under Title VII and **DENIES** summary judgment on Reynolds's discrimination claims. This action will be set for trial in short order.

It is SO ORDERED.

---

[7] Reynolds does assert that "[t]he most obvious problems with the discipline imposed [related to the incident] are that: (1) Reynolds was simply complying with instructions and (2) it happened while Reynolds was *at home, off-duty and asleep*." (Dkt. No. 41 at 11 (emphasis in original)); (*see also* Dkt. No. 34-4 at 82–88 (Reynolds's deposition testimony in which she disputes the discipline she received for the January 2022 incident)). However, this assertion is supported only by her self-serving testimony. Such testimony does not constitute competent summary judgment evidence. *Sw. Bell Tel. Co. v. Fitch*, 801 F.Supp.2d 555, 565 (S.D. Tex. 2011) (citing *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000)).

Signed on March 30, 2026.

DREW B. TIPTON
**UNITED STATES DISTRICT JUDGE**